# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Joseph R. L.,                                        Case No. 20-CV-2586 (JFD)

              Plaintiff,

v.                                                                      **ORDER**

Kilolo Kijakazi,

              Defendant.

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Joseph R. L. seeks judicial review of a final decision by the Defendant Commissioner of Social Security denying his application for disability insurance benefits ("DIB"). The matter is now before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 23) and Defendant's Motion for Summary Judgment (Dkt. No. 25). For the reasons set forth below, the Court denies Plaintiff's motion, grants Defendant's motion, and affirms the final decision.

## I.    Background

Plaintiff applied for DIB benefits on May 23, 2017, asserting that he became disabled on October 7, 2015. (Soc. Sec. Admin. R. (hereinafter "R.") 228–29.)[1] Plaintiff's allegedly disabling conditions were a herniated disc, spinal stenosis, multiple joint arthritis,

---

[1] The Social Security administrative record is filed at Dkt. Nos. 19 through 19-8. The record is consecutively paginated, and the Court cites to that pagination rather than docket number and page.

soft tissue injuries of the arm, and a cervical spine impairment. (R. 248.) The date Plaintiff was last insured for DIB benefits is December 31, 2016. (R. 13).

Plaintiff's DIB application was denied on initial review and reconsideration. An Administrative Law Judge ("ALJ") held a hearing at Plaintiff's request on April 23, 2019. (R. 43.) At the hearing, Plaintiff testified that pain in his neck and arm, headaches, migraines, and anxiety prevented him from working. (R. 57.) His pain was worse at the hearing than it had been in 2016. (R. 58.) Plaintiff testified that his impairments caused difficulty ascending stairs, reaching overhead and to the side, standing, sitting, walking, learning new materials, concentrating, and working with others. (R. 54, 57, 61, 62.) He claimed that he could not sit for more than 20 to 30 minutes due to pain, and he could not stand for more than 30 minutes without dizziness or headaches. (R. 61.) In addition, his neck pain reportedly caused headaches and dizziness when he looked in any direction, and he would need to sit down. (R. 60–61.) According to Plaintiff, his right arm pain caused difficulty gripping and holding items, and he dropped things almost daily. (R. 69.) Plaintiff further testified that his learning abilities were affected by memories and flashbacks of child sexual and other abuse. (R. 66–67.) He reportedly slept only four hours a night. (R. 63.) In addition, Plaintiff stated that his depression affected his attention and concentration, and he had panic attacks daily. (R. 70.)

During a typical day in 2016, Plaintiff testified, he would dress himself, shower, walk his dog, and perhaps visit his mother. (R. 64–65.) He could drive but did not like driving long distances. (R. 54–55.) He did not do any household chores, and he did not like to shop for groceries due to anxiety and not being able to reach for food on the shelves. (R.

2

67–68.) Plaintiff's past jobs include construction work, maintenance work at a drycleaner, and truck loader at a warehouse. (R. 56.)

After Plaintiff testified, the ALJ asked vocational expert Steven Bosch to consider a hypothetical person of the same age, education, and work experience as Plaintiff, who could perform light work; could never climb ladders, ropes, or scaffolds; could occasionally climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; could not reach overhead; should not have to constantly keep his neck flexed up or down frequently; should not work at unprotected heights or control moving, dangerous machinery; and could understand, remember, and carry out simple, routine instructions and tasks consistent with Specific Vocational Preparation ("SVP") Level 1 and 2 work.[2] (R. 74–76.) Mr. Bosch testified that the individual could not do any of Plaintiff's past jobs, but could work as a bench assembler, product assembler, electronics worker, or housekeeping cleaner. (R. 74.) If a 10-pound lifting restriction were added to the hypothetical, the individual could still work as an electronics worker or assembler. (R. 77.) If limitations to occasional handling bilaterally and occasional fingering with the right hand were added, no jobs would be available. (R. 79.)

The ALJ issued a written decision on May 8, 2019, determining that Plaintiff was not disabled. (R. 7.) Pursuant to the five-step sequential analysis outlined in 20 C.F.R.

---

[2] SVP "is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific jobworker situation. Dictionary of Occupational Titles app. C, 1991 WL 688702 (4th ed. 1991). SVP Level 1 work requires only a short demonstration. *Id.* SVP Level 2 work requires more than a short demonstration up to one month. *Id.*

§ 404.1520, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (October 7, 2015) through the date last insured (December 31, 2016). (R. 13.) At the second step, the ALJ found that Plaintiff had severe impairments of cervical degenerative disc disease, post-traumatic stress disorder, major depressive disorder, and panic disorder. (R. 13.) At step three, the ALJ concluded that none of Plaintiff's impairments, alone or in combination, met or medically equaled the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. 13.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC").[3] As part of that assessment, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the evidence of record. (R. 16.) The ALJ further determined that there was little objective medical evidence to support the claimed limitations and symptoms of the upper extremities since the alleged onset date, and that Plaintiff's course of care had been minimal. (R. 16.) The ALJ made essentially the same determinations concerning Plaintiff's mental impairments and functioning. (R. 18.) As to medical opinion evidence, the ALJ found the medical opinions of the physical state agency consultants persuasive; the medical opinions of the psychological state agency consultants mostly persuasive; a medical opinion from Judith Workman, PA-C, not persuasive; and a medical opinion from Sara Prescher, PsyD, LP, not persuasive. (R. 20–21.) Ultimately, the ALJ concluded that Plaintiff had the RFC

---

[3] RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

to perform light work as defined in 20 CFR 404.1567(b) except the individual could never climb ladders, ropes and scaffolds. The individual could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl. The individual should not work at unprotected heights or have the operational control of moving, dangerous machinery. The individual could understand, remember and carry out simple, routine instructions and tasks consistent with *Specific Vocational Preparation* (SVP) level 1 and 2 work. The individual could not perform any overhead reaching. The individual may frequently, but should not be required to constantly keep his neck flexed up or down, such as might be required when using a microscope.

(R. 15.) With this RFC, the ALJ concluded, Plaintiff could not perform his past employment. (R. 21.) Thus, the ALJ proceeded to step five, where the ALJ determined that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy. (R. 22.) Consequently, Plaintiff was not disabled. (R. 22.)

The Appeals Council denied Plaintiff's request for review of the ALJ's decision. (R. 1.) This made the ALJ's decision the final decision of the Commissioner for the purpose of judicial review.

Plaintiff seeks reversal of the Commissioner's final decision and remand for further administrative proceedings. He argues that the ALJ erred in the following respects: (1) the ALJ failed to properly evaluate medical opinion evidence from Ms. Workman, the non-examining state agency medical consultants, and Dr. Prescher; (2) the ALJ did not explain what evidence supported the finding that Plaintiff could understand, remember, and carry out simple, routine instructions and tasks consistent with SVP Level 1 and 2 work; (3) the ALJ failed to properly evaluate Plaintiff's testimony about the intensity and persistence of his symptoms; and (4) the ALJ's hypothetical question to the vocational expert was flawed. The Commissioner opposes Plaintiff's motion.

## II.     Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence in the record as a whole supports the decision, 42 U.S.C. § 405(g), or whether the ALJ's decision resulted from an error of law, *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1089 (8th Cir. 2018). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or because the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

It is a claimant's burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The disability, not just the impairment, must have

6

lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

In this case, to qualify for DIB, Plaintiff must establish that he was disabled on or after October 7, 2015, but before December 31, 2016. *See Mueller v. Astrue*, 561 F.3d 837, 840 (8th Cir. 2009). Evidence during that timeframe is therefore most relevant. *See Reed v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 506, 507 (8th Cir. 2019).

## III.   Discussion

### A.   Ms. Workman's Medical Opinion

In a progress note from January 2016, Ms. Workman documented that Plaintiff has had chronic neck pain, right cervical radicular pain, and headaches since May 2009. (R. 396.) He has not worked since June 2009. (R. 396.) Physical therapy, steroid injunctions, a TENS unit, chiropractic care, surgery, and lidocaine patches reportedly have not provided relief. (R. 396.) Ms. Workman wrote that Plaintiff had a right C6-7 foraminotomy in 2011, but declined additional surgery because there was no guarantee it would help with pain relief, and because he lacked insurance and could not afford it. (R. 396.) Plaintiff reported subjective symptoms to Ms. Workman including increased headaches related to neck pain, pain with any activity, headache pain that caused vomiting, right arm pain, and jaw pain. (R. 396.) Plaintiff told Ms. Workman his pain also made him depressed. (R. 396.)

On examination, Plaintiff appeared uncomfortable and was tender over the right back muscles, the base of the skull, and the upper trapezius. (R. 397.) Ms. Workman observed a decreased range of motion but found no weakness in his bilateral extremities. (R. 397.) Ms. Workman recommended that Plaintiff get a functional capacity evaluation

and a second opinion about surgery. (R. 397.) Ms. Workman prescribed Plaintiff FLUoxetine for depression, and Plaintiff later called the clinic to say the medication was working. (R. 397–98.)

Plaintiff returned to Ms. Workman in June 2016 for treatment of migraine and neck pain, and a medication refill. (R. 400.) The subjective and objective portions of the progress note were nearly identical to the January 2016 progress note. (R. 400.)

During an examination in November 2016, Ms. Workman documented that Plaintiff had a limited range of spinal motion, pain with sitting, and a full range of motion and good strength in his upper extremities. (R. 414.) He also had a full range of motion in his lower extremities, with normal gait. (R. 414.) Plaintiff was alert and oriented with normal affect and insight, although he appeared depressed and anxious. (R. 414.)

Ms. Workman completed a Multiple Impairment Questionnaire on July 17, 2017, more than six months after the date Plaintiff was last insured. (R. 433–37.) She listed Plaintiff's diagnoses as chronic neck pain, right cervical radiculopathy causing right upper extremity weakness, right leg weakness, migraine headaches, and PTSD. (R. 433.) With respect to functional limitations, Ms. Workman opined that Plaintiff could perform a job in a seated position for two hours a day, but could never stand or walk; could never lift or carry more than ten pounds; could never reach with his arms; could only occasionally grasp, turn, and twist objects; and could never use his right hand or finger for fine manipulations. (R. 435–36.) She opined that Plaintiff's symptoms would frequently interfere with his attention and concentration and that he would be absent from work more

than three times a month. (R. 436–37.) Ms. Workman indicated that Plaintiff's symptoms and limitations spanned back to 2011. (R. 437.)

The ALJ found Ms. Workman's July 2017 opinion not persuasive because it was inconsistent with medical evidence of normal strength, function, and sensation in the upper extremities. (R. 20.) In addition, the ALJ observed, Plaintiff's medical records documented no gait abnormalities or motor strength abnormalities. (R. 20.) The ALJ also found Ms. Workman's opinion that pain would interfere frequently with attention and concentration not persuasive because it was inconsistent with mental status examinations, which reported no abnormal findings for attention or concentration, and because it was based on a different functional capacity evaluation by therapist Lori Anderson that the ALJ considered but found to have no persuasive value. (R. 20.)

For DIB claims filed on or after March 27, 2017, such as Plaintiff's, medical opinions and prior administrative medical findings are evaluated for their "persuasiveness" according to five factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 404.1520c(c)(1)–(5). The most important factors are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). An ALJ may, but is not required to, explain his or her consideration of the other factors. *Id.*

Plaintiff challenges the ALJ's evaluation of Ms. Workman's medical opinion in several respects. He first finds fault with the ALJ's consideration of his gait, pointing out that his impairments relate to his cervical spine and right arm, not his hips, lower back, knees, or legs. (Pl.'s Mem. Supp. at 14.) But the ALJ considered Plaintiff's gait in assessing the persuasiveness of Ms. Workman's opinion because Ms. Workman included in that

opinion a diagnosis of right leg weakness and opined that Plaintiff could never stand or walk during a workday. That diagnosis and limitation are not consistent with or supported by medical evidence, including evidence from Ms. Workman, and the ALJ did not err in considering those inconsistencies in evaluating the persuasiveness of Ms. Workman's opinion.

Plaintiff next argues that Ms. Workman's opinion concerning his cervical spine impairments was supported by medical evidence. (Pl.'s Mem. Supp. at 15.) That may be so, but the Court's duty "is not to reweigh the evidence, but to ensure that the Commissioner's decision is supported by substantial evidence in the record." *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010). The Court has considered evidence that both supports and offsets the ALJ's consideration of Ms. Workman's opinion and Plaintiff's cervical spine impairments.

Objective medical evidence from Ms. Workman during the relevant time period between October 7, 2015, and December 31, 2016, documented that Plaintiff had no weakness and good strength in his bilateral upper extremities. Plaintiff's range of motion was sometimes full, but sometimes decreased. Plaintiff's upper back and neck were tender to palpation. Ms. Workman made no objective findings concerning Plaintiff's hands or fingers. Upon consideration of the medical evidence from Ms. Workman, the Court finds the ALJ did not err in finding Ms. Workman's opinion inconsistent with and not supported by her own objective observations and findings.

In July 2016, which was during the relevant timeframe, therapist Lori Anderson conducted a functional capacity evaluation of Plaintiff. (R. 332–37.) The ALJ gave the

evaluation no persuasive value (R. 20), however, and Plaintiff does not challenge that determination on judicial review.

Although the most relevant evidence is dated between October 7, 2015, and December 31, 2016, there is such scant evidence during that timeframe that the Court will also consider less relevant evidence immediately preceding and following that period. *See Hensley v. Colvin*, 829 F.3d 926, 929–30 (8th Cir. 2016) (defining the relevant timeframe as between the onset date and the last-insured date but considering evidence outside that window that related to the plaintiff's medical conditions during that timeframe). In June 2015, about four months before the alleged onset date, a physical examination by Dr. Christina Gonzaga documented 4/5 strength in right wrist flexors, extensors, and triceps. (R. 387.) Those findings, while supporting some loss of strength, are not consistent with the upper extremity limitations opined to by Ms. Workman.

An MRI, also in June 2015, revealed degenerative disc disease with loss of disc space height in two levels; normal alignment; no significant findings at the C2-3 level; mild narrowing of the left neural foramen at the C3-4 level; mild disc osteophyte complex flattening the ventral thecal sac and moderate left neural foraminal stenosis at the C4-5 level; posterior disc osteophyte complex mildly effacing the ventral thecal sac and moderate right neural foraminal stenosis at the C5-6 level; minimal disc osteophyte complex flattening the ventral thecal sac and mild narrowing of the neural foramen at the C6-7 level; and no significant findings at the C7-T1 level. (R. 388.) Dr. Gonzaga reviewed the MRI results with Plaintiff and referred Plaintiff to Ioan Chitu, PA-C, for a neurosurgery consultation. (R. 388–90.) At the consultation, Plaintiff appeared comfortable, was in no

11

apparent distress, and moved all extremities. (R. 392.) On physical examination, Mr. Chitu found that Plaintiff had full strength in his bilateral upper extremities, including hand intrinsics and grasp. (R. 392.) Those findings are not consistent with the upper extremity limitations opined by Ms. Workman and thus Mr. Chitu's findings support the ALJ's decision to find Ms. Workman's opinions not persuasive. Mr. Chitu also found, however, that Plaintiff's cervical spine was tender to palpation and his neck was stiff with a decreased range of motion. (R. 392.) Those findings could support some limitations related to the cervical spine and neck, but not the limitations opined by Ms. Workman.

There are no progress notes or treatment records from 2017—the year following Plaintiff's date last insured—by a provider who treated his pain or physical impairments. This lack of treatment is not consistent with the limitations opined by Dr. Workman and thus support the ALJ's decision to find the opinion not persuasive.  In March 2018, more than a year after the last-insured date, Dr. Christina Manders documented a full range of motion in all extremities and noted no limitations. (R. 526.) This evidence also supports the ALJ's assessment of Ms. Workman's opinion.

In sum, the ALJ did not err in considering Ms. Workman's medical opinion unpersuasive, and substantial evidence supports the ALJ's determination that the opinion was not persuasive.

### B.    Prior Administrative Medical Findings

Medical opinion evidence and prior administrative medical findings are treated equally under 20 C.F.R. § 404.1520c. Plaintiff argues the ALJ failed to follow 20 C.F.R. § 404.1520c in assessing the opinions of the non-examining state agency medical

consultants by failing to explain how the opinions were supported by and consistent with the record. (Pl.'s Mem. Supp. at 16.) To the contrary, the ALJ found the prior administrative medical findings concerning Plaintiff's *physical* impairments "internally well supported and consistent with the record, including the lack of ongoing medical treatment and minimal physical examination findings through the date last insured." (R. 20.) The ALJ found the medical opinions about Plaintiff's *mental* impairments "consistent with and supported by the minimal mental status examination finding and brief and conservative course of care" and thus persuasive. (R. 20.) The ALJ was not required to explain how she considered factors other than supportability and consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ did not err in considering the prior administrative medical findings.

### C.     Dr. Prescher's Medical Opinion

Plaintiff began psychotherapy appointments with Dr. Prescher in July 2016. (R. 339.) Dr. Prescher diagnosed Plaintiff with PTSD, a mild depressive disorder, and a panic disorder. (R. 341.) A mental status examination revealed intact recent and remote memory, good concentration and understanding of relevant information, normal speech, adequate insight and judgment, intact thought processes, and average intellectual functioning. (R. 341.) Dr. Prescher made similar objective findings during subsequent sessions in August and September 2016. (R. 345, 348, 351, 354.) In August 2017, Plaintiff's recent memory appeared impaired but his remote memory appeared intact; he understood relevant information and concentrated throughout the session; his mood was extremely anxious; his speech was normal and language use clear; and his fund of knowledge, awareness, insight,

and judgment were adequate. (R. 496.) His diagnoses were PTSD, moderate depressive disorder, panic disorder, and obsessive-compulsive disorder. (R. 497.)

Dr. Prescher completed a Psychiatric/Psychological Impairment Questionnaire at the end of the August 2017 session. (R. 438–42.) The second page of the form asked for the "signs and symptoms"—not objective observations or clinical findings—that support the evaluation, and Dr. Prescher checked numerous boxes that corresponded with Plaintiff's reported, subjective symptoms. (R. 439.) In the section asking for supporting clinical findings, Dr. Prescher wrote "No formal objective measures used. Consistently high scores on PHQ-9 [and] GAD-7." (R. 440.) Dr. Prescher also wrote that Plaintiff's increased anxiety, problems concentrating, cognitive functioning, and ability to complete tasks would cause him to decompensate or deteriorate at work. (R. 440.) Dr. Prescher opined that Plaintiff had marked limitations[4] in understanding and remembering detailed instructions; maintaining concentration and attention for extended periods; completing a workday without interruptions from psychological symptoms; performing at a consistent pace without unreasonably long rest periods; responding appropriately to workplace changes; being aware of hazards and taking precautions; and traveling to unfamiliar places or using public transportation. (R. 441.) Dr. Prescher further opined that Plaintiff would have moderate-to-marked limitations[5] in numerous understanding, memory, concentration, persistence, and social interaction abilities. (R. 441.)

---

[4] A marked limitation means that symptoms would constantly interfere with the ability. (R. 441.)

[5] A moderate-to-marked limitation means that symptoms would frequently interfere with the ability. (R. 441.)

The ALJ found the "marked" and "extreme" limitations opined by Dr. Prescher not persuasive because they were based on Plaintiff's subjective reports and situational stressors, rather than objective findings. (R. 21.) Thus, according to the ALJ, they were not objectively supported or consistent with the record. (R. 21.) The ALJ further noted that progress notes showed limited visits and minimal mental status examination findings. (R. 21.)

Plaintiff argues that the ALJ did not comply with 20 C.F.R. § 404.1520c in considering Dr. Prescher's opinion. The Court disagrees. The ALJ explained that Dr. Prescher's opinion was inconsistent with her own progress notes during the relevant time period, which is accurate. Dr. Prescher's treatment notes contained objective findings of intact memory, good understanding of information, good concentration, normal speech and clear language, and adequate knowledge, awareness, insight, and judgment.

In addition, Dr. Prescher noted on the questionnaire that her assessment was based on PHQ-9 and GAD-7 scores. Both the PHQ-9 and GAD-7 forms are completed independently by the patient and are intended to reflect subjective symptoms. *Amy R. v. Saul*, No. 19-CV-1508 (KMM), 2020 WL 3077502, at *1 (D. Minn. June 10, 2020) ("[T]he PHQ-9 and the GAD-7 are measurements that are derived solely from the patient's report of their own subjective experience."); *Sheila A. v. Berryhill*, No. 17-CV-2161 (HB), 2018 WL 4572982, at *4 (D. Minn. Sept. 24, 2018) ("Because the content on a PHQ is derived exclusively from the patient's subjective complaints, it is subject to being credited or discredited for the same reasons as other subjective complaints."), *aff'd*, 802 F. App'x 228, 2020 WL 1970545 (8th Cir. 2020). The ALJ did not err by finding the assessment not

persuasive because it was based on Plaintiff's subjective complaints. *See Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007).

In sum, the Court finds that the ALJ's consideration of Dr. Prescher's opinion is supported by substantial evidence of record and that the ALJ followed 20 C.F.R. § 404.1520c in considering the opinion.

### D. The ALJ's Finding that Plaintiff Had the RFC to Understand, Remember, and Carry Out Simple, Routine Instructions and Tasks

Plaintiff contends the ALJ did not explain what medical evidence supported the finding that Plaintiff had the mental RFC to understand, remember, and carry out simple, routine instructions and tasks consistent with SVP Level 1 and 2 work. (Pl.'s Mem. at 19.)

RFC is a medical question, and some medical evidence must support it. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Medical records prepared by a claimant's doctor are sufficient to support an RFC assessment. *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011); *see also KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 372–73 (8th Cir. 2016) (finding the RFC was adequately supported where, in arriving at the RFC, the ALJ properly considered the medical evidence, the plaintiff's reported functioning and activities, and the plaintiff's testimony in arriving at the RFC). To the extent Plaintiff is implying that no medical *opinion* evidence supported the finding at issue, that is not required. *Hensley*, 829 F.3d at 932 ("[T]here is no requirement that an RFC finding be supported by a specific medical opinion.").

Here, the ALJ described the mental status examination findings and remarked that the "very minimal course of care and mental status examination findings" factored in the

RFC assessment. (R. 18.) Those mental status examination findings included intact recent and remote memory, good concentration and understanding of relevant information, normal speech, adequate judgment, intact thought processes, and average intellectual functioning. The ALJ took particular note of normal findings for attention and concentration. (R. 20.)

In conclusion, the mostly normal mental status examination findings were medical evidence that supported the ALJ's determination that Plaintiff had the mental RFC to understand, remember, and carry out simple, routine instructions and tasks consistent with SVP Level 1 and 2 work. The ALJ adequately described the medical evidence that supported this limitation.

### E.      Plaintiff's Subjective Statements

Plaintiff argues that the ALJ erred in evaluating his subjective statements. In evaluating a claimant's statements about the intensity, persistence, and limiting effects of symptoms, an ALJ first determines whether the claimant has a medically determinable impairment that could cause the alleged symptoms. SSR 16-3p, 2016 WL 1119029, at *3 (S.S.A. Mar. 16, 2016). That determination is not at issue here.

Second, the ALJ evaluates the intensity, persistence, and limiting effect of the symptoms by considering the objective medical evidence and statements from the claimant and other sources, as well as the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *4–7.

Plaintiff first contends that "the clinical and objective medical evidence amply supports the opinions that [Plaintiff] has physical and/or mental disabilities that preclude him from working." (Pl.'s Mem. at 23.) Though there is evidence in the record to support Plaintiff's position, there is also substantial objective medical evidence that is inconsistent with Plaintiff's position. As detailed above, physical examination findings included no weakness in Plaintiff's bilateral extremities, full range of motion in his upper extremities, good strength in his upper extremities, and no ambulation or gait difficulty. That evidence is not consistent with Plaintiff's subjective statements that he had trouble going up stairs, reaching overhead and to the side, gripping and holding items, standing more than 30 minutes, sitting more than 20 minutes, and walking. Mental status examination findings included intact memory, good concentration and understanding, adequate insight and judgment, intact thought processes, and average intellectual functioning. That evidence is not consistent with Plaintiff's subjective statements that he had trouble concentrating or learning new materials.

Plaintiff next contends the ALJ erred by describing the treatment of his cervical spine condition as minimal and conservative. After mentioning the 2011 surgery—which certainly was neither minimal nor conservative, but also predated the relevant time period by several years—the ALJ observed that objective examination findings during the relevant time period were relatively minimal, and the ALJ summarized the objective medical evidence that supported that observation. (R. 16–18; *see* R. 397, 400, 414.) The Court finds that the ALJ did not err in her characterization of the treatment of Plaintiff's cervical spine condition as minimal and conservative during the relevant timeframe.

Plaintiff also claims that some gaps in his treatment were caused by a lack of medical insurance, which the ALJ failed to consider. The ALJ did consider Plaintiff's temporary lack of health insurance, however, as well as Plaintiff's lack of funds to pay for additional surgery and psychotherapy. (R. 17, 19.) The ALJ also noted when Plaintiff obtained new insurance. (R. 17.)  Thus, this argument is not persuasive.

Finally, Plaintiff takes issue with the ALJ's consideration of his daily activities, arguing that engaging in daily activities does not mean that he could "work in a competitive job environment in the real world, 8 hours a day, 40 hours a week." (Pl.'s Mem. at 24.) Plaintiff misstates the context in which the ALJ considered his daily activities. The ALJ properly considered Plaintiff's daily activities as a factor relevant to the consideration of Plaintiff's symptoms, as allowed by SSR 16-3p. To the extent the ALJ commented that Plaintiff's daily activities "are supportive of a range of light work" (R. 21), similar conclusory language is used frequently. *E.g.*, *Brown v. Astrue*, 611 F.3d 941, 955 (8th Cir. 2010) ("Brown's daily activities, in conjunction with other record evidence, support the

19

ALJ's finding that Brown is capable of performing light work."); *Lumley v. Soc. Sec. Admin.*, No. 1:18-CV-202, 2021 WL 3145967, at *5, 10 (D.N.D. July 26, 2021) (affirming ALJ's evaluation of subjective symptoms where ALJ found activities of daily living "support a reduced range of light work activity"). Such language does not constitute reversible error.

### F.    The  Hypothetical Question Posed to the Vocational Expert

Plaintiff argues that the hypothetical question posed to the vocational expert was inaccurate because the ALJ found at step two of the sequential evaluation that Plaintiff was moderately limited in certain abilities (understanding, remembering, or applying information, and concentrating, persisting, or maintaining pace), but did not include those limitations in the hypothetical question. (Pl.'s Mem. at 25; *see* R. 14.)

Plaintiff's argument conflates the analyses at steps two and three, where the ALJ uses the psychiatric review technique and paragraph "B" criteria to assess the severity of mental impairments, with the RFC determination, where the ALJ determines the work-related limitations caused by the mental impairments. The ALJ explained that the paragraph "B" limitations that are considered at steps two and three are not factored into the RFC assessment that is used at steps four and five. (R. 15.)

The Eighth Circuit rejected a similar argument in *Chismarich v. Berryhill*, 888 F.3d 978 (8th Cir. 2018). The court commented that "[a]s a practical matter, . . . the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they

20

can be harmonized." *Id.* at 980. Because the analyses at the different steps could be harmonized, there was no error. *Id.*

In finding Plaintiff moderately limited in understanding, remembering, or applying information at step three, the ALJ noted there were no abnormal mental status examination findings for cognition or sensorium until after the date last insured, but "[g]iving the claimant the benefit of all reasonable doubt, the undersigned finds moderate limitation in this area." (R. 14.) Any inconsistency between the moderate limitation at step two and the RFC assessment can be harmonized by the ALJ's benevolence in giving Plaintiff the benefit of the doubt, despite the lack of objective examination findings. The ALJ made the same comment with respect to the moderate limitation in concentrating, persisting, or maintaining pace. (R. 14.) Consequently, the Court concludes the ALJ's analyses can be harmonized, and the ALJ did not err in framing the hypothetical question to the vocational expert.

## IV.    Conclusion

Based on all of the files, records, and proceedings herein,   **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion for Summary Judgment (Dkt. No. 23) is **DENIED**.

2.    Defendant's Motion for Summary Judgment (Dkt. No. 25) is **GRANTED**.

3.    The decision of the Commissioner of Social Security is **AFFIRMED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Date: May 27, 2022                    _s/ John F. Docherty_____
                                      JOHN F. DOCHERTY
                                      United States Magistrate Judge